# United States Court of Appeals for the Fourth Circuit

————

**UNITED STATES OF AMERICA,**

*Appellee,*

**v.**

**CALVIN DEVONTE BUSH,**

*Appellant.*

————

*On Appeal from the United States District Court for
the Middle District of North Carolina*

## RESPONSE BRIEF OF THE UNITED STATES

SANDRA J. HAIRSTON
*United States Attorney*

BY:    JULIE C. NIEMEIER
*Assistant United States Attorney*

101 South Edgeworth Street, 4th Floor
Greensboro, North Carolina 27401
Telephone: (336) 333–5351

*Attorneys for Appellee*

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ............................................................ 1

ISSUE PRESENTED ................................................................................ 2

STATEMENT OF THE CASE .................................................................. 2

    A.    Bush, a felon on federal supervised release, possesses a firearm during a volatile traffic stop. ..................................... 2

    B.    Bush pleads guilty to his second § 922(g)(1) offense and admits violating supervised release; receives Guidelines sentence. ............................................................................... 4

SUMMARY OF ARGUMENT .................................................................. 6

ARGUMENT ............................................................................................ 8

Bush cannot show on plain-error review that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him. ........................................... 8

    A.    Standard of Review .............................................................. 8

    B.    Discussion .............................................................................. 9

        1.    Bruen did not undermine this Court's previous decisions rejecting as-applied challenges to § 922(g)(1) ............... 9

        2.    Section 922(g)(1)'s plainly legitimate sweep encompasses Bush's offense. ...................................... 22

CONCLUSION ...................................................................................... 25

CERTIFICATE OF COMPLIANCE ...................................................... 27

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*United States v. Rahimi*, ---S. Ct.   ----,
2024 WL 3074728 (June 21, 2024) ................................... 16, 17, 19, 20

*District of Columbia v. Heller*,
554 U.S. 570 (2008) .................................................................... passim

*Folajtar v. Attorney General*,
980 F.3d 897 (3d Cir. 2020) ........................................................ 22, 23

*Hamilton v. Pallozzi*,
848 F.3d 614 (4th Cir. 2017) ....................................................... 12, 14

*Kanter v. Barr*,
919 F.3d 437 (7th Cir. 2019) .............................................................. 22

*New York State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) ...................................................................... passim

*Range v. Attorney General*,
69 F.4th 96 (3d Cir. 2023) ................................................................. 18

*United States v. Avila*,
No. 22-50088, 2022 WL 17832287 (5th Cir. Dec. 21, 2022) ............... 21

*United States v. Canada*,
--- F.4th ----, 2024 WL 2807182 (4th Cir. June 3, 2024) ............. passim

*United States v. Chester*,
628 F.3d 673 (4th Cir. 2010) ....................................................... 10, 11

*United States v. Claybrooks*,
90 F.4th 248 (4th Cir. 2024) ........................................................ 8, 21

*United States v. Davis*,
855 F.3d 587 (4th Cir. 2017) .............................................................. 21

*United States v. Dorsey*,
--- F.4th ----, 2024 WL 3196742 (3d Cir. June 24, 2024) ................. 8, 19

*United States v. Duarte*,
101 F.4th 657 (9th Cir. 2024) ............................................................ 20

*United States v. Dubois*,
94 F.4th 1284 (11th Cir. 2024) .......................................................... 20

*United States v. Gay*,
98 F.4th 843 (7th Cir. 2024) ............................................................. 18

*United States v. Gonzalez*,
No. 22-1242, 2022 WL 4376074 (7th Cir. Sept. 22, 2022) ............. 24, 25

ii

*United States v. Hill,*
  776 F.3d 243 (4th Cir. 2015) ............................................................. 15
*United States v. Jackson,*
  69 F.4th 495 (8th Cir. 2023) .............................................................. 20
*United States v. Kline,*
  494 F. App'x 323 (4th Cir. 2012) ....................................................... 12
*United States v. Lunsford,*
  470 F. App'x 184 (4th Cir. 2012) ....................................................... 11
*United States v. Marcus,*
  560 U.S. 258 (2010) ................................................................... 8, 21
*United States v. Middleton,*
  883 F.3d 485 (4th Cir. 2018) ....................................................... 15, 16
*United States v. Moore,*
  666 F.3d 313 (4th Cir. 2012) ....................................................... 11, 14
*United States v. Morrison,*
  504 F. App'x 247 (4th Cir. 2013) ....................................................... 12
*United States v. Olano,*
  507 U.S. 725 (1993) ........................................................................ 8
*United States v. Perez-Garcia,*
  96 F.4th 1166 (9th Cir. 2024) ........................................................... 23
*United States v. Pruess,*
  703 F.3d 242 (4th Cir. 2012) .................................................. 8, 11, 23
*United States v. Smoot,*
  690 F.3d 215 (4th Cir. 2012) ........................................................... 11
*United States v. Taylor,*
  594 F. App'x 784 (4th Cir. 2014) ....................................................... 12
*United States v. Thorpe,*
  680 F. App'x 209 (4th Cir. 2017) ....................................................... 12
*Vincent v. Garland,*
  80 F.4th 1197 (10th Cir. 2023) ......................................................... 20

## Statutes

18 U.S.C. § 1751(a) ......................................................................... 24
18 U.S.C. § 2113 ............................................................................. 24
18 U.S.C. § 2119 ............................................................................. 24
18 U.S.C. § 3231 ............................................................................... 1
18 U.S.C. § 3583 ............................................................................... 1
18 U.S.C. § 36 ................................................................................. 24

18 U.S.C. § 922(g)(1)..........................................................2, 4, 8

18 U.S.C. § 922(n)...................................................................22

28 U.S.C. § 1291 ......................................................................2

## **Rules**

Fed. R. Crim. P. 52(b)..............................................................8

## **Other Authorities**

*The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 Wyo. L. Rev. 249 (2020) .....................................22

In the

UNITED STATES COURT OF APPEALS

for the Fourth Circuit

_____

_____

Nos. 24-4155(L), 24-4157

_____

UNITED STATES OF AMERICA,

Appellee,

v.

CALVIN DEVONTE BUSH,

Appellant.

_____

On Appeal from the United States District Court
For the Middle District of North Carolina

_____

**BRIEF FOR APPELLEE**

**<u>STATEMENT OF JURISDICTION</u>**

Calvin Devonte Bush directly appeals his conviction and sentence

following entry of a guilty plea and revocation of supervised release. The

United States District Court for the Middle District of North Carolina

had jurisdiction pursuant to 18 U.S.C. § 3231 and 18 U.S.C. § 3583. The

court entered judgment in both matters on March 15, 2024. JA81–88,

JA89–98. Bush timely appealed on March 18, 2024. JA99–100, JA101–

102. This Court has jurisdiction over both cases under 28 U.S.C. § 1291.

## ISSUE PRESENTED

**Whether, on plain-error review, 18 U.S.C. § 922(g)(1)'s prohibition on possession of a firearm by a felon violates the Second Amendment as applied to Bush.**

## STATEMENT OF THE CASE

A.   *Bush, a felon on federal supervised release, possesses a firearm during a volatile traffic stop.*

This is Bush's second prosecution for violating 18 U.S.C. § 922(g)(1).

When he pleaded guilty to the first § 922(g)(1) offense in 2020, Bush

already had three North Carolina felony convictions: a 2012 conviction

for felony breaking and/or entering, for which he served a sentence of 6

to 17 months after his probation was revoked; and 2013 convictions for

felony attempted robbery with a dangerous weapon and felony assault

with a deadly weapon with intent to kill and inflict serious injury

(AWDWIKISI), for which he received a consolidated sentence of 50 to 72

months.[1] JA114–115. In October 2020, Bush was sentenced in federal

---

[1] The offenses occurred on the same date and involved the same victim. Bush first threatened the victim with a firearm and then ultimately shot the victim in the side. JA115. After completing his initial

court to 42 months in prison, followed by three years of supervised release. JA91–93. In May 2023, he was released from prison and began his term of supervised release. JA24.

Less than a month later, on the evening of June 18, 2023, a Sanford police officer stopped Bush's vehicle after observing him speeding and driving erratically. JA24, JA29, JA110. During the traffic stop, Bush floored the accelerator and tried to put the car in drive, repeatedly ignoring commands to put his hands on the dashboard, and reached for something in his waistband. JA29–30. The arresting officer had to hold Bush at gunpoint until backup officers arrived. JA25, JA111. When officers frisked Bush, they found a loaded Ruger 9mm handgun in his pants. JA111. Officers also seized a small baggie of marijuana sitting on the center console and a grocery bag containing about half a pound of marijuana from the backseat. JA25.

---

sentence, Bush served another year in prison after his post-release supervision was revoked. JA115.

B. *Bush pleads guilty to his second § 922(g)(1) offense and admits violating supervised release; receives Guidelines sentence.*

On August 28, 2023, a grand jury returned a single-count indictment charging Bush with a second violation of 18 U.S.C. § 922(g)(1). JA12–13. Bush absconded and remained a fugitive for nearly two months. JA9, JA31. On December 6, 2023, Bush entered a guilty plea pursuant to a plea agreement. JA10, JA14–23.

During the pendency of Bush's new prosecution, United States Probation petitioned the district court to revoke Bush's supervised release in case 1:20-cr-143. JA4–6. As amended, the petition reflected seven violations of Bush's supervised release, including his possession of the Ruger firearm on June 18, 2023, four failed drug tests, possession of marijuana at his arrest on June 18, 2023, misdemeanor charges of speeding and giving police officers a fake name arising on a separate occasion, and two technical violations. JA29–31.

A presentence report (PSR) was prepared in preparation for sentencing. With an offense level of 17 and criminal history category of

V, Bush's Guidelines range on the new offense was 46 to 57 months. JA126. Bush's counsel had no objections to the PSR. JA134.

At a combined sentencing and supervised release revocation hearing in March 2024, at which Bush had no objections, the district court imposed a sentence at the bottom of the Guidelines—46 months. JA36, JA59. The district court highlighted the "very serious and volatile situation" created by Bush's reaction to the June 18 traffic stop and the fact he possessed a firearm while on federal supervision for possession of a firearm. JA56. The court explained it declined to vary downward due to the aggravating factors present, in addition to "the very short period of time between all of these offenses that shows a repeated return to criminal activity." JA59.

On the supervised release matter, Bush admitted the violations; finding Bush had violated supervised release, the district court ordered Bush's supervised release revoked. JA65, JA67, JA73. The court calculated Bush's Chapter 7 advisory Guidelines range on the revocation to be 8 to 14 months and the supervised release range 36 months, less

any term of incarceration imposed. JA68. After considering the Guidelines, the arguments of the parties, and the applicable § 3553(a) factors, the court imposed a revocation sentence of 14 months, consecutive to the 42-month sentence in the new case, with no additional supervision imposed. JA75–76. Judgment was entered in both cases on March 15, 2024. JA81–98. This appeal followed.

## SUMMARY OF ARGUMENT

1. Courts are "grappling with many difficult decisions in the wake of *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). But the facial constitutionality of Section § 922(g)(1) is not one of them." *United States v. Canada*, --- F.4th ----, 2024 WL 2807182, at *1 (4th Cir. June 3, 2024). *Bruen*'s articulation of a two-step test focusing on the history and tradition of firearms regulation did not call into question existing "longstanding prohibitions on the possession of firearms by felons." *Bruen*, 597 U.S. at 9; *see also District of Columbia v. Heller*, 554 U.S. 570, 626–27 & n.26 (2008). As such, *Bruen* did not abrogate this Court's decisions rejecting as-applied challenges to felon-dispossession

statutes, and on plain-error review, Bush cannot meet his burden of showing a clear or obvious error.

2.     Even without considering pre-*Bruen* circuit precedent, Bush's conduct falls within the "plainly legitimate sweep" of § 922(g)(1). *Canada*, 2024 WL 2807182, at *1. While allowing there may be "some room" for as-applied challenges following *Bruen*, the *Canada* panel provided several illustrative examples of offenses for which prosecution under § 922(g)(1) would be within the plainly legitimate sweep of the statute, each of which was a violent offense. *Id.* Bush's criminal history reflects similarly violent offenses: attempted armed robbery and an AWDWIKISI shooting. As a violent felon with multiple convictions, Bush plainly falls outside the scope of the Second Amendment. He cannot show his conviction for violating § 922(g)(1) was unconstitutional.

**ARGUMENT**

**Bush cannot show on plain-error review that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him.**

A.   Standard of Review

This Court ordinarily reviews Second Amendment challenges de novo. *United States v. Pruess*, 703 F.3d 242, 245 (4th Cir. 2012). But where, as here, a defendant fails to preserve his *Bruen* claim below, this Court reviews only for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Claybrooks*, 90 F.4th 248, 256 (4th Cir. 2024); *United States v. Olano*, 507 U.S. 725, 731 (1993); s*ee also United States v. Dorsey*, --- F.4th ----, 2024 WL 3196742, at *1 (3d Cir. June 24, 2024). To obtain relief under this standard, Bush must show "that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [his] substantial rights . . . ; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (quotations and brackets omitted).

B. <u>Discussion</u>

Bush cannot satisfy his burden of a showing a clear or obvious error because there is no controlling or even persuasive precedent supporting his argument. As he recognizes, any facial challenge to Section 922(g)(1) following *Bruen* is foreclosed by recent precedent. *Canada*, 2024 WL 2807182, at *1 (noting that although Second Amendment law "is in flux" after *Bruen*, "the facial constitutionality of Section 922(g)(1)" is not a "difficult question"). No authority supports Bush's as-applied challenge to Section 922(g)(1), as this Court's previous decisions, rejecting similar challenges, survive *Bruen*. Finally, in view of his criminal history, Bush's conduct falls within what *Canada* characterized as the "plainly legitimate sweep" of the statute.

1. Bruen did not undermine this Court's previous decisions rejecting as-applied challenges to § 922(g)(1).

This Court allowed in *Canada* that *Bruen* may leave "*some* room for as-applied challenges to Section 922(g)(1)." *Id.* (internal quotation omitted). But the Court explicitly declined to revisit its pre-*Bruen*, post-*Heller* decisions rejecting as-applied challenges to felon-dispossession

statutes, including Section 922(g)(1), which means those decisions remain controlling. *Id.*

In *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), the Supreme Court held that the Second Amendment protects the right of "law-abiding, responsible citizens" to keep firearms in their homes for self-defense. *Heller* clarified that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. And it said that "nothing in [its] opinion should be taken to cast doubt" on certain "presumptively lawful regulatory measures," such as "longstanding prohibitions on the possession of firearms by felons." *Id.* at 626–27 & n.26.

After *Heller*, this Court adopted a "two-part approach to Second Amendment claims." *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010). Under the first step, the Court undertook a "historical inquiry" that asked "whether the conduct at issue was understood to be within the scope of the right at the time of ratification." *Id.* "If the challenged regulation burden[ed] conduct that was within the scope of the Second

Amendment as historically understood," the Court "move[d] to the second step of applying an appropriate form of means-end scrutiny." *Id.*

Relying on *Heller*'s statement that laws dispossessing felons are "presumptively lawful," this Court upheld § 922(g)(1) under a "more streamlined" *Chester* analysis. *United States v. Moore*, 666 F.3d 313, 318 (4th Cir. 2012). Moore held that, whatever *Heller* meant by "presumptively lawful," *Heller*'s statement "negates a facial challenge to a felon in possession statute like § 922(g)(1)." *Id. Moore* also rejected the defendant's as-applied challenge, because he was not "within the category of citizens" that *Heller* said possessed a right to bear arms: "'law-abiding responsible citizens.'" *Id.* at 319 (quoting *Heller*, 554 U.S. at 635, and adding emphasis). "Particularly in light of his extensive and violent criminal history," this Court concluded that the defendant's conduct was "plainly outside the scope of the Second Amendment."[2] *Id.* at 320.

---

[2] Since *Moore*, this Court has rejected many more as-applied Second Amendment challenges to § 922(g)(1). *See United States v. Smoot*, 690 F.3d 215, 221–22 (4th Cir. 2012); *Pruess*, 703 F.3d at 245–47; *United States v. Lunsford*, 470 F. App'x 184, 185 (4th Cir. 2012) (unpublished);

More recently, this Court held that a Maryland felon-dispossession statute was constitutional under "step one of the *Chester* inquiry." *Hamilton v. Pallozzi*, 848 F.3d 614, 626 (4th Cir. 2017). The Court held that "conviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment." *Id.* "Where the sovereign has labeled the crime a felony, it represents the sovereign's determination that the crime reflects grave misjudgment and maladjustment," and "[a] felon cannot be returned to the category of 'law-abiding, responsible citizens' . . . unless the felony conviction is pardoned or the law defining the crime of conviction is found unconstitutional or otherwise unlawful." *Id.* (quotations omitted).

In *Bruen*, 142 S. Ct. at 2122, the Supreme Court held that the Second Amendment protects the right of "ordinary, law-abiding citizens" to "carry a handgun for self-defense outside the home." *Bruen* struck

---

*United States v. Kline*, 494 F. App'x 323, 324–26 (4th Cir. 2012) (unpublished); *United States v. Morrison*, 504 F. App'x 247, 250 (4th Cir. 2013) (unpublished); *United States v. Taylor*, 594 F. App'x 784, 790 (4th Cir. 2014) (unpublished); *United States v. Thorpe*, 680 F. App'x 209, 211 (4th Cir. 2017) (unpublished).

down a New York law that required residents to demonstrate a "proper cause" to obtain a license to carry a handgun outside the home because that law "prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 2122, 2156.

*Bruen* rejected the "two-step" framework adopted by most courts of appeals (including this Court) after *Heller* that "combine[d] history with means-end scrutiny." *Bruen*, 142 S. Ct. at 2125–26. *Bruen* observed that "[s]tep one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Id.* at 2127. But the Court "decline[d] to adopt" the second step of that framework, holding that "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." *Id.* at 2126–27.

*Bruen* "reiterate[d]" the "standard for applying the Second Amendment." *Bruen*, 142 S. Ct. at 2129. First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution

presumptively protects that conduct." *Id.* at 2129–30. Second, when a regulation burdens such presumptively protected conduct, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

This Court's decisions upholding § 922(g)(1) are consistent with the text-and-history analysis that *Bruen* requires. Those decisions did not rely on the kind of means-end scrutiny that *Bruen* rejected but instead relied on *Heller*'s statements that "longstanding prohibitions on the possession of firearms by felons" are "presumptively lawful," 554 U.S. at 626–27 & n.26, and that the Second Amendment protects the rights of "law-abiding, responsible citizens," *id.* at 635. *See Hamilton*, 848 F.3d at 625–28; *Moore*, 666 F.3d at 318–20. *Bruen* does not call *Heller*'s statements into question. Justice Alito explained in concurrence that *Bruen* does not "disturb[ ] anything that [the Court] said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns." *Bruen*, 142 S. Ct. at 2157 (Alito. J., concurring). And

Justice Kavanaugh (joined by the Chief Justice) emphasized that "the Second Amendment allows a 'variety' of gun regulations" and reiterated *Heller*'s statement about not "cast[ing] doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 2162 (Kavanaugh, J., concurring) (quotations omitted).

This Court's precedent "controls" unless "intervening case law from [this C]ourt sitting en banc or the Supreme Court has explicitly or implicitly overruled it." *United States v. Hill*, 776 F.3d 243, 248 (4th Cir. 2015). And where a Supreme Court decision "abrogate[s] a portion" of this Court's prior precedent, other parts of the precedent remain "good law." *United States v. Middleton*, 883 F.3d 485, 491 (4th Cir. 2018). Here, *Bruen* abrogated the second, means-end-scrutiny step of this Court's framework. But it did not call into question this Court's decisions holding that felon-dispossession laws, either facially or as-applied, are consistent with the Second Amendment under the first, non-abrogated step of this Court's pre-*Bruen* framework. Indeed, as just explained, three justices in the *Bruen* majority took pains to re-emphasize the parts of *Heller* on

which this Court relied. Because this circuit precedent remains "good law," *Middleton*, 883 F.3d at 491, and squarely forecloses Bush's claim, he cannot show any error in his conviction under § 922(g)(1).

*Heller* and *Bruen*'s references to "longstanding prohibitions" being "presumptively lawful" are echoed in *United States v. Rahimi*, --- S. Ct. ----, 2024 WL 3074728 (June 21, 2024). There, the Court held that § 922(g)(8)'s prohibition on firearm possession by those subject to a domestic-violence restraining order is constitutional: "An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." 2024 WL 3074728, at *11. *Rahimi* upheld § 922(g)(8) based on analogies to historical surety laws and "going armed" laws, explaining, "Section 922(g)(8) is by no means identical to these founding era regimes, but it does not need to be." *Id.* at *9. Instead, § 922(g)(8) is "relevantly similar" to founding-era laws because it "restricts gun use to mitigate demonstrated threats of physical violence." *Id.* at *9. The Court rejected Rahimi's characterization of *Heller*—that it categorically prohibited any

regulations that forbid firearm possession in one's home—observing, rather, that the Court's *Heller* opinion "stated that many such prohibitions, *like those on the possession of firearms by 'felons* and the mentally ill,' are 'presumptively lawful.'" *Id.* at \*10 (quoting *Heller*, 554 U.S. at 626, 627, n.26) (emphasis added); *see also id.* at \*28 (Kavanaugh, J., concurring, quoting same passage, noting *Heller* "recognized a few categories of traditional exceptions to the [Second Amendment] right").

*Rahimi* observed that "some courts have misunderstood the methodology of [the Court's] recent Second Amendment cases" to "suggest a law trapped in amber." *Id.* at \*6. But it explained that "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *Id.* "[T]he appropriate analysis involves considering whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition." *Id.* (emphasis added). The Court faulted the Fifth Circuit for "read[ing] *Bruen* to require a 'historical twin' rather than a 'historical analogue.'" *Id.* at \*11 (quotation omitted).

17

Bush's invocation of out-of-circuit decisions in *United States v. Gay*, 98 F.4th 843 (7th Cir. 2024) and *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc), *vacated*, No. 23-374 (U.S. July 2, 2024) is misplaced, as neither of those support his argument. *Gay* rejected an as-applied challenge of a felon with 22 convictions (including aggravated battery of a peace officer and possessing a weapon in prison), holding that a person who "does not fit" within the category of "law-abiding, responsible citizens" does not have "a constitutional right to possess firearms." 98 F.4th 843, 846, 847 (7th Cir. 2024) (cleaned up). Accordingly, *Gay* supports the government's position, not Bush's.

In *Range*, the Third Circuit sustained the as-applied § 922(g)(1) challenge of a defendant convicted decades earlier of a state-law misdemeanor food-stamp fraud offense, but cautioned its decision was a "narrow" one that depended on the specific challenger "and his individual circumstances." *Range*, 69 F.4th at 105, 106. And the Third Circuit declined to extend *Range* to a mill-run § 922(g)(1) as-applied challenge, affirming on plain-error review the conviction of a defendant whose

underlying state-law offense was carrying a firearm without a license. *Dorsey*, 2024 WL 3196742, at *5. The court observed the defendant's reliance on *Range* "overstates the breadth of our holding," explaining *Range* "held only that disarming an individual with a single, almost-thirty-year-old criminal conviction for food stamp fraud was not consistent with the Second Amendment," and that the defendant "cannot show that it is beyond dispute that he is similarly situated to Range for Second Amendment purposes." *Id.* at *3.

The Supreme Court today granted certiorari, vacated, and remanded *Range* for further consideration in light of *Rahimi*. *Garland v. Range*, No. 23-374 (U.S. July 2, 2024). By so doing, the Court indicated not only its disapproval of the Third Circuit's decision in *Range*, but also a clear disinclination to conduct further forays into the constitutionality of firearm-dispossession statutes. Accordingly, *Rahimi*'s Second Amendment roadmap should be taken as the final word, at least for now—and that analysis provides no support for Bush's claim.

Bush did not cite *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024), *pet. for reh'g en banc filed*, No. 22-50048 (May 14, 2024), but if he had, that case is similarly unpersuasive, especially in view of *Rahimi*. A divided panel in *Duarte* found § 922(g)(1) unconstitutional as applied to the defendant (despite his five felony convictions including possession of a firearm by a felon), noting that the lack of a historical regulation "distinctly similar" to § 922(g)(1) "is strong if not conclusive evidence that the law is inconsistent with the Second Amendment." *Duarte*, 101 F.4th at 677 (cleaned up). But by seeking a precise historical *twin*, rather than evaluating the law for consistency with historical *principle*, the *Duarte* panel misread *Bruen* in much the same way the Fifth Circuit did. *See Rahimi*, 2024 WL 3074728, at *11. *Duarte*, which incorrectly applied de novo review despite the defendant's failure to raise the issue below, conflicts with decisions of the Eighth, Tenth, and Eleventh Circuits,[3] is

_____

[3] *See United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023), *petition for cert. filed*, No. 23-6170 (U.S. Nov. 28, 2023); *Vincent v. Garland*, 80 F.4th 1197, 1199–1202, 1200 n.3 (10th Cir. 2023), *petition for cert. filed*, No. 23-683 (U.S. Dec. 1, 2023); *United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024).

in tension with *Gay*, and goes well beyond the Third Circuit's distinguishable decision in *Range. See* Pet. for Reh'g En Banc 14–16, *United States v. Duarte*, No. 22-50048, ECF No. 72-1 (9th Cir. May 14, 2024). An outlier, *Duarte* should not be followed here.

Even if Bush could show error, he could not show that it was "clear or obvious." *Marcus*, 560 U.S. at 262 (quotations omitted). "[A]n error is plain if (1) the explicit language of a statute or rule resolves the question or (2) at the time of appellate consideration, the settled law of the Supreme Court or this Court establishes that an error has occurred." *United States v. Davis*, 855 F.3d 587, 595–96 (4th Cir. 2017). Neither is true here. *Bruen* neither abrogates this Court's earlier decisions upholding § 922(g)(1) as-applied nor calls that statute's constitutionality into question. *See Claybrooks*, 90 F.4th at 256 (rejecting plain-error challenge to §§ 922(j), 922(g)(3), and 922(n), noting "[t]he contours of *Bruen* continue to solidify in district and appellate courts across the nation, and yet there is no consensus"); *see also United States v. Avila*, No. 22-50088, 2022 WL 17832287, at *2 (5th Cir. Dec. 21, 2022) (per

curiam) (unpublished) (rejecting a plain-error challenge to 18 U.S.C. § 922(n) where there was "no binding precedent holding § 922(n) unconstitutional," such that accepting the challenge would require "extend[ing]" *Bruen* "to an entirely new context").

> ### 2. Section 922(g)(1)'s plainly legitimate sweep encompasses Bush's offense.

In any event, Section 922(g)(1) is constitutional as applied to Bush, who is a violent felon. As this Court recently explained, "Section 922(g)(1) . . . has a plainly legitimate sweep and may constitutionally be applied in at least *some* set of circumstances." *Canada*, 2024 WL 2807182, at *1 (cleaned up).

A few judges and commentators have maintained that the Second Amendment allows disarming only *dangerous* felons. *See Kanter v. Barr*, 919 F.3d 437, 451, 454, 464 (7th Cir. 2019) (Barrett, J., dissenting); *Folajtar v. Attorney General*, 980 F.3d 897, 912–15 (3d Cir. 2020) (Bibas, J., dissenting); Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 Wyo. L. Rev. 249, 257–67, 285–86 (2020). That minority view is incorrect not only

because it is foreclosed by circuit precedent that survives *Bruen*, *see, e.g.*, *Pruess*, 703 F.3d at 246–47 (rejecting as-applied challenge of allegedly non-violent felon because defendant's conduct fell outside scope of Second Amendment protection), but also because it lacks support in either *Heller*'s interpretation of the Amendment's text or the historical record. "At the time of the Second Amendment's ratification . . . , nonviolent crimes such as forgery and horse theft were capital offenses." *United States v. Perez-Garcia*, 96 F.4th 1166, 1183 (9th Cir. 2024). Many crimes, such as "residential burglary and drug dealing are not necessarily violent," but are nevertheless "dangerous because they often lead to violence." *Folajtar*, 980 F.3d at 922 (Bibas, J., dissenting). But Bush could be disarmed on account of his felony status even under that minority view because his criminal history reflects violence, i.e., dangerousness.

In *Canada*, this Court provided illustrative examples of plainly constitutional applications of Section 922(g)(1), each a violent felony offense:

> Take people who have been convicted of a drive-by-shooting, carjacking, armed bank robbery, or even assassinating the

President of the United States. See 18 U.S.C. §§ 36, 2119, 2113, 1751(a). Whether the proper analysis focuses on the definition of the "people," the history of disarming those who threaten the public safety, *Heller*'s and *Bruen*'s assurances about "longstanding prohibitions," or circuit precedent, the answer remains the same: the government may constitutionally forbid people who have been found guilty of such acts from continuing to possess firearms.

*Canada*, 2024 WL 2807182, at *1. "[W]hether a government can forbid *violent* felons from possessing a firearm has not been meaningfully questioned by courts to date." *United States v. Gonzalez*, No. 22-1242, 2022 WL 4376074, at *2 (7th Cir. Sept. 22, 2022). And here, Bush's violent felonies—an attempted armed robbery and an AWDWIKISI shooting—are just as serious and indicative of dangerousness as a drive-by shooting, a carjacking, or an armed bank robbery.[4] *Canada*, 2024 WL 2807182, at *1. Given Bush's violent criminal history, he cannot show error—much less plain error—in his Section § 922(g)(1) conviction. *See*

_____

[4] Moreover, the circumstances of Bush's instant offense—possession of a loaded firearm during a volatile traffic stop while on federal supervised release—perfectly illustrate how firearm possession offenses, while perhaps nonviolent on their face, are often committed in dangerous ways.

*Gonzalez*, 2022 WL 4376074, at \*2 (concluding "it would be frivolous to argue that § 922(g)(1) is unconstitutional as applied to" the defendant, convicted of attempted murder).

**<u>CONCLUSION</u>**

Bush's felonious history—including an attempted armed robbery and a shooting assault—places his conduct outside the scope of the Second Amendment's protection. His prosecution for § 922(g)(1) unquestionably falls within the "plainly legitimate sweep" of the statute. *Canada*, 2024 WL 2807182, at \*1. Based on the foregoing, the United States respectfully requests that the Court affirm the judgment of the district court.

## STATEMENT REGARDING ORAL ARGUMENT

The United States respectfully submits that oral argument is unnecessary to determine the issue presented and requests that the case be submitted on the briefs.

Respectfully submitted,

SANDRA J. HAIRSTON
United States Attorney


/S/ JULIE C. NIEMEIER
Assistant United States Attorney
NCSB #29365
United States Attorney's Office
Middle District of North Carolina
101 S. Edgeworth Street, 4th Floor
Greensboro, NC  27401
Phone:  336/333-5351

Date: July 2, 2024

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## Effective 12/01/2016

No. <u>24-4155(L)</u>    Caption: <u>United States of America v. Calvin Devonte Bush</u>

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. <u>See</u> Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

   <u>X</u>   this brief or other document contains <u>4,377</u> words

   <u>    </u>   this brief uses monospaced type and contains lines

This brief or other document complies with the typeface and type style requirements because:

   <u>X</u>   this brief or other document has been prepared in a proportionally spaced typeface using <u>Microsoft Word 2016</u> in <u>Century Schoolbook 14</u> **or**

   <u>    </u>   this brief or other document has been prepared in a monospaced typeface using <u>            </u> in <u>     </u> .

   <u>(s) Julie C. Niemeier, AUSA</u>
Party Name: <u>United States of America /Appellee</u>
Dated: <u>July 2, 2024</u>

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on July 2, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

Eugene E. Lester, Esquire

/S/ JULIE C. NIEMEIER
Assistant United States Attorney
NCSB #29365
United States Attorney's Office
Middle District of North Carolina
101 S. Edgeworth Street, 4th Floor
Greensboro, NC 27401
Phone: 336/333-5351